<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EVELYN DIZON,<br>o/b/o RODULFO T. LUYAO, *deceased*,<br><br>        Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil Action No. 17-2550 (SDW)<br><br>**OPINION**<br><br>February 19, 2019 |

**WIGENTON,** District Judge.

  Before the Court is Plaintiff Evelyn Dizon's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Michael A. Rodriguez's ("ALJ Rodriguez") denial of her deceased husband, Rodulfo Luyao's ("Claimant") claim for a period of Disability Insurance Benefits under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Rodriguez's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

**I.  PROCEDURAL AND FACTUAL HISTORY**

    **A.  Procedural History**

On December 19, 2012, Claimant applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits based on his diagnoses of gout, severe status post aortic mitral valve replacement, diabetes, hypertension, mitral stenosis, cardiomyopathy, and shortness of breath. (R. 127, 136, 209-15, 233.) The SSI application was granted and is not at issue on appeal. (R. 27.) However, the DIB claim was first denied on May 21, 2013 and again on reconsideration on November 25, 2013. (R. 126-48.) Claimant appealed, and ALJ Rodriguez held a hearing on July 23, 2015. (R. 42-105.) ALJ Rodriguez issued his decision denying Claimant's DIB application on October 26, 2015. (R. 24-35.) On October 29, 2015, Claimant requested that the Appeals Council review the ALJ's decision. (R. 23.) On December 6, 2015, Claimant died, and Plaintiff continued the appeal on her deceased husband's behalf. (R. 17-18, 125.) The Appeals Council denied the request for review on December 14, 2016, making the ALJ's decision the Commissioner's final decision. (R. 7-9.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of DIB benefits. (Compl. 2-3.)

    **B.  Factual History**

Claimant was fifty-one years old at the alleged onset of his disability, May 21, 2004, and fifty-six years old on his date last insured ("DLI"), December 31, 2009. (R. 209.) The administrative record reflects that Claimant met with numerous doctors to treat the medical issues associated with his claim. The following is a summary of the evidence.

Before his DLI, Claimant was diagnosed with coronary artery disease. Claimant saw Lawrence Mahdi, M.D. ("Dr. Mahdi") routinely beginning in March 2002 with complaints of chest

tightness, shortness of breath, and fatigability. (R. 436-503.) Echocardiograms performed between 2002 and 2010 indicated severe left ventricular hypertrophy and severe aortic regurgitation with ejection fractions ranging from 70-75% to 55-60%. (*Id.*) At least twice, Dr. Mahdi recommended that Claimant undergo catheterization and surgery or risk sudden death, which Claimant refused.[1] (R. 462, 464, 466.) Claimant did not undergo mitral and aortic valve replacement surgery until August 6, 2011, well after his DLI.

Claimant also suffered from hypertension. However, the evidence shows that Claimant's hypertension was controllable with medication. For example, on December 4, 2009, Claimant reported that he had not taken his medication for several days, and his blood pressure was 150/80. (R. 377.) However, on July 23, 2010, Claimant reported that he was on his medication, and his blood pressure was 120/70. (R. 376.) There is no evidence that his hypertension resulted in any end organ damage, such as visual impairment, heart disease, impairment of renal functioning, or stroke residuals prior to Claimant's DLI.

Claimant also alleged disability based on his diabetes. (R. 434-44.) The record reflects that Claimant did not comply with his diabetic regimen, especially during his extended trip in 2013 to the Philippines. (R. 346.) While Claimant's diabetes was certainly limiting after his DLI, there is no medical evidence of any substantial problems caused by diabetes prior to 2009.

**C. Hearing Testimony**

At the administrative hearing, ALJ Rodriguez heard testimony from Claimant and Vocational Expert Sherry Plant ("VE Plant"). (R. 42-105.) Claimant testified that he last worked as a lab technician at Columbus Hospital until he was terminated in 2004. (R. 56-57; *see also* R.

---

[1] Dr. Mahdi noted that Claimant underwent catheterization in 1992 or 1993, (R. 478), over a decade before the alleged onset of disability.

75, 293.) Claimant also testified that from 2004 to 2009 his symptoms were shortness of breath and exertional pain with occasional chest pains. (R. 68-69.) Upon questioning, Claimant stated that he typically ignored his doctors' requests to manage his diabetes due to his fear of needles and trouble managing his diet. (R. 69-72.) Claimant testified that he was often unable to get out of bed during his alleged disability period, but he occasionally took trips to church. (R. 73.)

During the hearing, VE Plant opined that Claimant's prior work as a medical technologist and chief medical technician have light exertional levels. (R. 89.) VE Plant testified that a hypothetical individual who is able to sit or stand for six hours in an eight hour period, can lift twenty pounds occasionally and ten pounds more frequently, and is unable to climb ladders, ropes, scaffolds, or crawl would be able to perform Claimant's prior work. (R. 91.) However, a hypothetical individual who is only able to stand for two hours would not be able to perform Claimant's prior work. (*Id.*) VE Plant further testified that other jobs in the national economy, such as hospital admitting clerk, medical secretary, and classification clerk, would be available for someone with such hypothetical limitations and Claimant's transferable skills. (R. 91-95.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus,

substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the

record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC.

20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

On October 26, 2015, ALJ Rodriguez issued a decision concluding that Claimant was not disabled prior to his DLI. (R. 27-35.) At step one, the ALJ found that Claimant was not engaged in SGA from his alleged onset of disability through his DLI, *i.e.*, May 21, 2004 through December 31, 2009. (R. 29.) At step two, the ALJ found that Claimant suffered from coronary artery disease,

hypertension, diabetes, and obesity, all of which he classified as severe impairments. (*Id.*) At step three, however, the ALJ concluded that Claimant's impairments do not meet or medically equal the severity of the listings for these respective impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. 30-31.)

Before undergoing the analysis in step four, ALJ Rodriguez made Claimant's RFC determination and concluded that, through his DLI, he could perform light work, lift and carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. (R. 31.) ALJ Rodriguez referred to a nearly exhaustive list of Claimant's medical records, finding that while the medical impairments could be expected to cause the alleged symptoms, the intensity, persistence, and limiting effects of these symptoms are not consistent with the medical evidence. (R. 31-34.) The ALJ tracked Claimant's medical history through Dr. Mahdi's treatment notes, which showed generalized complaints and intermittent visits, with a clear worsening of symptoms resulting in surgery on August 6, 2011, after Claimant's DLI. (R. 30.) Even though he was under no obligation to do so, ALJ Rodriguez addressed medical evidence following Claimant's DLI and noted that Claimant's visit to the emergency room in 2013 resulted from noncompliance with his diabetic regimen. (R. 31-33.) ALJ Rodriguez gave little weight to Dr. Mahdi's recommendation in 2002 that Claimant abstain from heavy lifting and bowling because Claimant's cardiac condition did not require surgery for another nine years.[2] (R. 32.) Additionally, Claimant reported the following year that he merely limited rather than stopped his bowling, which the ALJ interpreted to mean that Claimant had continued bowling despite his doctor's recommendation. (*Id.*) Next, ALJ Rodriguez considered Claimant's

---

[2] This Court further notes Dr. Mahdi recommended that Claimant abstain from bowling due to complaints of shoulder pain rather than a heart condition. (R. 474-75.)

obesity in conjunction with his other impairments and held that the obesity did not result in a disabling limitation of functioning prior to the DLI. (R. 30-31.) The ALJ again acknowledged the worsening of symptoms that took place only after the DLI as well as Claimant's ability to travel to the Philippines in 2011 and 2013. (R. 30-32.)

At step four, after making his RFC determination, ALJ Rodriguez found that Claimant could perform his past relevant work as a medical technician or chief medical technician. (R. 34-35.) It is clear that ALJ Rodriguez derived his determination from VE Plant's exact testimony on July 23, 2015. (R. 34-35, 88-104.) Because he found that Claimant could perform his past relevant work, ALJ Rodriguez did not need to move on to step five of the analysis. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

On appeal, Plaintiff seeks reversal of the Commissioner's decision and asserts that ALJ Rodriguez did not properly evaluate the medical evidence and that he incorrectly assessed Claimant's RFC. (Pl.'s Br. 16-27, ECF No. 12.) This Court considers the arguments in turn and finds them each without merit.

Plaintiff first claims that ALJ Rodriguez improperly evaluated Claimant's subjective complaints, emphasizing Claimant's consistent work history and the fact that his treating doctors did not question his credibility. (Pl.'s Br. 18.) As the ultimate factfinder, the ALJ has the authority to reject a claimant's testimony as incredible, provided that he can explain his reasoning. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007); *see also Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004) (holding that an ALJ is not required to give heightened credibility to claimants based solely on their work history). Here, ALJ Rodriguez credited Claimant's bowling and travel as specific evidence showing that Claimant's daily activities and treatment were not aligned with what one would expect given his alleged symptoms. Additionally, ALJ Rodriguez

10

credited Claimant's prescribed treatment as being relatively effective in controlling both his hypertension and diabetes, with both the medical evidence and Claimant's testimony indicating a hesitancy to monitor his conditions. (R. 30, 346); *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372 (3d Cir. 2009) (holding that an ALJ is permitted to consider non-compliance with treatment when determining credibility). Based on the foregoing, ALJ Rodriguez properly considered Claimant's complaints in conjunction with the medical evidence as a whole and substantial credible evidence exists in the record to support his findings.

Plaintiff also argues that ALJ Rodriguez erred by not considering Claimant's obesity in conjunction with his other impairments. (Pl.'s Br. 18.) ALJ Rodriguez properly discussed Claimant's obesity and concluded that there was no medical evidence to support the notion that obesity limited Claimant beyond what the ALJ had found. (R. 30-34.) Furthermore, Plaintiff has not set forth any evidence to suggest that Claimant's obesity limited him in any significant way prior to his DLI. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (concluding that remand was not required because the plaintiff did not specify how obesity would affect the ALJ's analysis); *Santini v. Comm'r of Soc. Sec.*, No. 08-5348, 2009 WL 3380319, at *7 (D.N.J. Oct. 15, 2009); *see also Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2012) ("The Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist."). Therefore, ALJ Rodriguez properly considered Claimant's obesity in light of the record.

With respect to Plaintiff's argument that the ALJ erred as a matter of law by finding that Claimant could perform light work, it is clear that in calculating Claimant's RFC, ALJ Rodriguez examined the objective medical evidence before him and explained which records he afforded greater or lesser weight. (R. 42-46.) ALJ Rodriguez followed a proper two-step process for the RFC determination, first determining whether there were medically-determinable impairments and

then evaluating the intensity, persistence, or functionally limiting effects of those impairments. There is substantial evidence in the record to support ALJ Rodriguez's RFC calculus, including but not limited to treatment notes indicating only generalized complaints, conservative and intermittent doctors' visits, Claimant's continuing to bowl after Dr. Mahdi advised against it, extended trips to visit family in the Philippines in 2011 and 2013, and testimony indicating that Claimant allowed his diabetes to remain uncontrolled and worsen. (R. 32, 70-72, 80, 471.) After ALJ Rodriguez made his RFC determination, he found Claimant was not disabled because he was able to perform his prior work as either a medical technician or chief medical technician. (R. 34-35.) Because the hypothetical posed was proper and the ALJ's opinion is clear that he relied on VE Plant's testimony in reaching his conclusion, substantial evidence exists in the record to support ALJ Rodriguez's determination.

### IV. CONCLUSION

This Court finds that ALJ Rodriguez's factual findings were supported by substantial credible evidence in the record and his legal determinations were correct. Therefore, the Commissioner's determination is **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties